AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>JOSEPH AUGUSTIN TORRALBA<br><br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 13-8268-WM |

FILED by _____ D.C.
MAY 24 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 23, 2013__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) | Possession with Intent to Distribute a controlled substance, namely 3, 4-Methylenedioxymethamphetamine, a/k/a "MDMA." |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Joshua Meuse, Special Agent, DEA
_Printed name and title_

Sworn to before me and signed in my presence.

Date: May 24, 2013

_____
_Judge's signature_

City and state: West Palm Beach, Florida

United States Magistrate Judge William Matthewman
_Printed name and title_

# AFFIDAVIT
# OF
# JOSHUA J. MEUSE
# SPECIAL AGENT
# DRUG ENFORCEMENT ADMINISTRATION

I, Joshua J. Meuse, being duly sworn, depose and state as follows:

1.     I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) United States Department of Justice (DOJ), currently assigned to the Miami, Florida, Field Division. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1)(e) and Title 21, United States Code.

2.     I have been a SA with the DEA since March 28, 2010. I am currently assigned to the DEA West Palm Beach Resident Office. Prior to my employment with DEA, I served as a Police Officer with the Gloucester Police Department in Gloucester, Massachusetts from December 2004 to December 2005. I am currently assigned to investigations dealing with all aspects of importation, manufacturing, and distribution of illegal drugs, to include cocaine hydrochloride, "crack" cocaine, marijuana, Methylone, 4-MEC, and MDMA.

3.     While employed with the DEA, I have received ongoing training to include classes in Basic Telecommunication Exploitation, Internet Telecommunication Exploitation and Wire and Oral Telecommunication Interceptions. As a SA with the DEA, I have conducted investigations of, and have been instructed in investigative techniques, concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing, or using controlled substances, and conspiracies to commit these offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 856, 846,

1

952, and 963, respectively. Based upon this experience, and through the experience of other agents and detectives with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have also conducted physical surveillances, electronic surveillances, and wire surveillances. Additionally, I have arrested individuals for various drug violations and have spoken with a number of drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. As a result of my law enforcement experiences, and the experience of other agents and detectives I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions. Instead, they use coded language to disguise their conversations about illegal narcotics transactions and also frequently communicate via text messages.

4. The information contained in this affidavit is based on my personal participation in this investigation and from information provided to me by other SAs and analysts for DEA and other federal, state and local law enforcement agents and officers. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint for Joseph Augustin TORRALBA, I have not set forth every fact known to me regarding this investigation. Rather, I have set forth only the facts I believe are necessary to establish probable cause for the arrest of Joseph Augustin TORRALBA for the offense of Possession with Intent to Distribute a controlled substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a MDMA, a/k/a "Molly" a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

**FACTS IN SUPPORT OF PROBABLE CAUSE**

5. In May of 2013, DEA began an investigation into the drug trafficking activities of Joseph Augustin TORRALBA (hereinafter referred to as TORRALBA). This investigation began

2

as a result of DEA agents learning that TORRALBA had previously purchased approximately 500 grams of MDMA powder, a Schedule I controlled substance, from a Boca Raton Police Department Confidential Source (hereinafter referred to as CS). Specifically, the CS explained that prior to his/her cooperation with law enforcement the CS had shipped MDMA to TORRALBA in creatine supplement containers from Canada, where the MDMA is believed to have been manufactured, to Palm Beach County, Florida. Based upon this information, DEA began its investigation and ultimately arrested TORRALBA on May 23, 2013, with approximately 827.2 grams (gross weight with packaging) of MDMA in his possession along with approximately $6,500.00 in U.S. currency which was to be used to purchase an additional 500 grams of MDMA powder from the CS.

6.    During the course of this investigation, a number of monitored and recorded telephone calls were made during which TORRALBA told the CS that he wanted to exchange approximately 600 grams of MDMA powder he had previously purchased from the CS because he did not like the quality of the MDMA powder. In addition, TORRALBA wanted to purchase an additional half kilogram of MDMA from the CS. Ultimately, the CS and TORRALBA agreed to meet on May 20, 2013, to discuss the details surrounding the exchange of one half kilogram of MDMA and the sale of an additional half kilogram of MDMA.

7.    On May 20, 2013, at approximately 11:06 a.m., law enforcement established surveillance at the apartments located at 1401 Village Blvd, West Palm Beach, Florida. At that time, agents observed a grey Infinity with attached license plate 253HDV parked in front of building 6. An inquiry with the Florida Department of Motor Vehicles revealed that this vehicle is registered to TORRALBA. Agents then observed TORRALBA depart building 6, enter the Infinity, and leave the apartment complex. At approximately 11:48 a.m. TORRALBA arrived at the agreed upon meeting location, namely the Starbuck's located at 1870 Okeechobee Blvd, West

Palm Beach, Florida. Law enforcement agents then observed TORRALBA exit his vehicle and enter the Starbuck's. Agents maintained visual surveillance as TORRALBA met with the CS. A recording of the phone conversations prior to the meeting, along with audio and video surveillance of the meeting, were obtained by law enforcement. Following the meeting with TORRALBA, the CS was interviewed by law enforcement. During this interview, the CS stated that TORRALBA wanted to trade approximately 500-600 grams of MDMA powder that was previously sent to him by the CS for a better quality of MDMA powder. TORRALBA also told the CS he wanted to purchase an additional 500 grams of MDMA for $6,500.00 in U.S. currency. The CS agreed to the terms and told TORRALBA that the CS would do the deal with him (TORRALBA) at the end of the week.

8. On May 21, 2013, and again on May 22, 2013, a number of monitored and recorded telephone calls were made between the CS and TORRALBA during which the arrangements regarding the time and place of the exchange and purchase of MDMA were discussed. Ultimately, TORRALBA and the CS agreed to meet on May 23, 2013, at approximately 3:00 p.m. in Boca Raton, Florida to complete the transaction.

9. On May 23, 2013, at approximately 2:30 p.m., agents established surveillance at the parking lot of the Hooters Restaurant, located at 2440 N.W. 19th Street, Boca Raton Florida, 33431 within the Southern District of Florida. A monitored and recorded telephone conversation was placed from the CS to TORRALBA. The CS told TORRALBA to meet him/her at the Hooters in the parking lot. TORRALBA told the CS that he would be there soon. At approximately 3:12 p.m., agents observed TORRALBA arrive in the parking lot and pull up next to the CS's vehicle. TORRALBA was observed exiting his grey Infinity and opening the trunk of the vehicle. Agents then observed TORRALBA remove a brown paper bag from the trunk of the Infinity and walk over

4

to the passenger side of the CS's vehicle. TORRALBA entered the passenger side of the CS' vehicle. At that time the CS signaled to agents that TORRALBA had the suspected MDMA and currency in his possession. TORRALBA was then arrested without incident. A video recording of this transaction was obtained by law enforcement. Within the CS' vehicle, agents located the brown bag that TORRALBA removed from the trunk of TORRALBA's Infinity. The brown bag contained 1 envelope with an undetermined amount of U.S. currency along with two creatine supplement containers. Inside both creatine supplement containers was a white crystal powder the field tested positive for the presence of MDMA. The gross weight with packaging of the suspected MDMA was approximately 827.2 grams.

Based upon the aforementioned, I respectfully submit that probable cause exists to believe that Joseph Augustin TORRALBA has committed the offense of Possession with Intent to Distribute a controlled substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

AFFIANT FURTHER SAYETH NAUGHT.

SPECIAL AGENT JOSHUA MEUSE
DRUG ENFORCMENT ADMINISTRATION

Sworn to and subscribed before
me this 24th day of May, 2013.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 13-8268-WM

UNITED STATES OF AMERICA

vs.

JOSEPH AUGUSTIN TORRALBA,

Defendant.
_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
Jennifer C. Millien
Assistant United States Attorney
Florida Bar No. 171700
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
TEL: (561) 820-8711
FAX: (561) 805-9846